UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VICTOR VELASQUEZ,<br><br>            Plaintiff,<br><br>   v.<br><br>CITY OF SANTA CLARA, et al.,<br><br>            Defendants. | Case No.: 5:11-cv-03588-PSG<br><br>**ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket Nos. 77, 87, 108, and 114)** |

Plaintiff Victor Velasquez ("Velasquez") and Defendants City of Santa Clara, the Santa Clara Police Department, Steve Burress, Craig Middlekauff, Nick Richards, and Chief Stephen Lodge (collectively, "Defendants") each move for summary judgment.[1] Velasquez and Defendants oppose each other's motions. The parties appeared for a hearing. Having reviewed the papers and considered the arguments, the court DENIES both motions.

Velasquez also moves the court to order the California Department of Corrections to house Velasquez locally and to appear in person at trial.[2] Defendants oppose Velasquez's motion. Having reviewed the papers and considered the arguments, the court DENIES Velasquez's motion.

---

[1] *See* Docket Nos. 77 and 87.

[2] *See* Docket Nos. 108 and 114.

1

Case No.: 5:11-cv-03588-PSG
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

# I. BACKGROUND

Velasquez's complaint asserts causes-of-action pursuant to (1) 42 U.S.C. § 1983 and (2) Cal. Civ. Code §§ 51.7 and 52.1. The complaint also asserts claims for (3) assault, (4) battery, (5) negligence, and (6) intentional infliction of emotional distress.[3]

# II. LEGAL STANDARDS

## A. Summary Judgment

Pursuant to Fed. R. Civ. P. 56(a), the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] Material facts are those that may affect the outcome of the case.[5] A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.[6] When the parties file cross-motions for summary judgment, the district court must consider all of the evidence submitted in support of both motions to evaluate whether a genuine issue of material fact exists precluding summary judgment for either party.[7]

## B. Qualified Immunity

Qualified immunity shields government officials from civil liability under Section 1983 where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[8] "Qualified immunity balances two important interests—

---

[3] *See* Docket No. 1-1 at 12-21.

[4] Fed. R. Civ. P. 56(a).

[5] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

[6] *See id.*

[7] *See Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (the "court must review the evidence submitted in support" of each cross-motion).

[8] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not

2
Case No.: 5:11-cv-03588-PSG
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[9]

A police officer is entitled to qualified immunity from a civil rights action unless, under the particularized circumstances he faced at the time of his actions, it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted.[10] The issue of qualified immunity requires a determination of: (1) whether the facts show the officer's conduct violated a constitutional right and (2) whether the right was clearly established.[11] The court may evaluate the two prongs in any order.[12] It is the responsibility of the jury, not the judge, to determine any disputed foundational or historical facts that underlie the determination of whether an officer is entitled to qualified immunity.[13]

In qualified immunity cases, the plaintiff "bears the burden of proving that the rights she

---

violate clearly established statutory or constitutional rights of which a reasonable person" would have known).

[9] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[10] *See Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").

[11] *See Pearson*, 555 U.S. at 232 ("Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.").

[12] *See id.* at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

[13] *See Acosta v. City & Cnty. of San Francisco*, 83 F.3d 1143, 1147 (9th Cir. 1996) ("Regardless of who makes the ultimate determination as to qualified immunity, the jury, not the judge, must decide the disputed 'foundational' or 'historical' facts that underlie the determination."); *see also Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995) ("The threshold determination of whether the law is clearly established is a question of law for the court. The second part of the test, whether a reasonable state official could have believed the action taken was lawful, is a mixed question of law and fact. It involves an objective test of whether a reasonable official could have believed that his conduct was lawful in light of what he knew and the action he took. If there are genuine issues of material fact in issue relating to the historical facts of what the official knew or what he did, it is clear that these are questions of fact for the jury to determine.") (citations omitted).

3
Case No.: 5:11-cv-03588-PSG
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

claims were 'clearly established' at the time of the alleged violation."[14] The burden is on the government, however, to show that "a reasonable police officer could have believed, in light of the settled law, that he was not violating a constitutional or statutory right."[15]

While qualified immunity may apply to a federal civil rights claim under Section 1983, it has no application to similar California state law tort claims.[16] Under California law, police officers are not immune from suit for use of excessive force in making an arrest, nor are they immune from suit for battery.[17]

## C. Velasquez's Request to be Incarcerated Locally and Appear at Trial

"Generally speaking, prisoners who bring civil actions, including prisoners who bring actions under the civil rights statute, 42 U.S.C. § 1983, have no right to be personally present at any stage of the judicial proceedings."[18] "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."[19] Although "the constitution guarantees prison inmates free access" to the courts, incarcerated plaintiffs do not enjoy a "constitutional right to be personally present at judicial proceedings in a civil case" they have initiated.[20] "Rather, district courts have discretion

---

[14] *Moran v. Washington*, 147 F.3d 839, 844 (9th Cir. 1998) (citing *Davis v. Scherer*, 468 U.S. 183, 197 (1984)).

[15] *Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994).

[16] *See Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016-1017 (9th Cir. 2002) ("California denies immunity to police officers who use excessive force" in arresting a suspect and public employees "are similarly not entitled to immunity in suits for false arrest or false imprisonment.").

[17] *See Scruggs v. Haynes*, 252 Cal. App. 2d 256, 267-268 (1967) (a "police officer does not have discretionary immunity from liability for the use of unreasonable force in making an arrest").

[18] *Holt v. Pitts*, 619 F.2d 558, 560 (6th Cir. 1980).

[19] *Price v. Johnston*, 334 U.S. 266, 285-86 (1948).

[20] *Thomas v. O'Brien*, Case No: 5:08-cv-0318-DEP, 2011 WL 5452012, at *3 (N.D.N.Y. Nov. 8, 2011); *see also Twitty v. Ashcroft*, 712 F. Supp. 2d 30, 31 (D. Conn. 2009) ("It is well settled that a plaintiff prisoner does not have a constitutional right to be physically present at the jury trial of his civil rights claim.").

4
Case No.: 5:11-cv-03588-PSG
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

'to determine whether a prison inmate shall attend court proceedings held in connection with an action initiated by the inmate.'"[21]  Nonetheless, the "fact that there is no constitutional right to be present in a civil action does not sanction the summary exclusion of a plaintiff-prisoner from the trial of his prison-connected civil rights claim."[22]  The "trial court must weigh the interest of the plaintiff in presenting his testimony in person against the interest of the state in maintaining the confinement of the plaintiff-prisoner."[23]

"When determining whether to issue a writ of habeas corpus ad testificandum, the Ninth Circuit has directed courts to weigh the following four *Ballard* Factors: (1) whether the prisoner's presence will substantially further the resolution of the case; (2) the security risks presented by the prisoner's presence; (3) the expense of the prisoner's transportation and safekeeping; and (4) whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted."[24]

---

[21] *Vaughan v. Sposato*, Case No: 11-cv-3097-SJF-ARL, 2013 WL 5774880, at *2 (E.D.N.Y. Oct. 21, 2013) (quoting *Stone v. Morris*, 546 F.2d 730, 735 (7th Cir. 1976)).

[22] *Stone*, 546 F.2d at 735; *see also Latiolais v. Whitley*, 93 F.3d 205, 208 (5th Cir.1996) ("Although a prisoner has no constitutional right to be present, or to testify, at his own civil trial, the district court may not summarily exclude a prisoner-plaintiff from the trial of his civil rights suit."); *Muhammad v. Warden, Baltimore City Jail*, 849 F.2d 107, 112 (4th Cir. 1988) ("That an incarcerated litigant's right" to be present is "necessarily qualified, however, does not mean that it can be arbitrarily" denied.  Instead, "the law requires a reasoned consideration" of the alternatives.).

[23] *Stone*, 546 F.2d at 735.

[24] *Montes v. Rafalowski*, Case No 5:09-cv-00976-RMW, 2012 WL 2395273, at *1 (N.D. Cal. June 25, 2012) (citing *Wiggins v. Alameda Cnty.*, 717 F.2d 466, n.1 (9th Cir. 1983)); *see also Latiolais*, 93 F.3d at 208 (quoting *Ballard v. Spradley*, 557 F.2d 476, 480 (5th Cir. 1977)) ("In order to determine whether the prisoner should appear at trial, the district court must consider factors such as 'whether the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping, and whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted.'").

## III. DISCUSSION

### A.   Summary Judgment Motions

Summary judgment is not warranted in this case, because the facts that underlie all of the claims at issue are in dispute. A genuine dispute of material fact remains as to (1) whether the officers' belief that Velasquez was dangerous was reasonable, (2) whether a warning was given to Velasquez, (3) how Velasquez reacted when confronted, and (4) what opportunity, if any, officers had to stop firing earlier.

First, Velasquez contends that Defendants relied on unreliable information in forming an unreasonable belief that Velasquez was armed and dangerous when the police confronted him in the parking lot.[25] Defendants respond with evidence that their belief was reasonable, based on a foundation of credible informant reports coupled with Velasquez's actions before the shooting.[26]

Second, Velasquez points to evidence that Defendants did not provide an adequate warning before opening fire.[27] Defendants counter with warnings given to Velasquez before the officers opened fire.[28]

Third, the parties dispute the manner in which Velasquez responded to the police. Velasquez claims he put his hands up when he recognized and understood the officer's orders.[29]

---

[25] *See* Docket No. 78-1, Ex. 1a at 139 ("Roderick never observed the suspect to have a weapon."); Docket No. 92-2, Ex. 1a at 158 (a search of Velasquez after the shooting did not uncover a gun); Docket No. 95 at 143 (police stopped their Tahoe at an angle four feet from Velasquez's rear bumper); Docket Nos. 93-1 and 93-2, Exs. 8 and 8a (photographs of Velasquez's tinted car); Docket No. 78-3, Ex. 3 (a formal informant file did not exist for the second informant).

[26] *See* Docket No. 84-3, Ex. 14 at 82:3-82:14 (explaining Velasquez threatened an informant with a gun in the past); Docket No. 84-2, Ex. 13 at 48:16-49:19 and Docket No. 84-3, Ex. 14 at 63:15-65:2 (describing second informant's credibility and usefulness in past reports); Docket No. 84-3, Ex. 14 at 128:1-129:11 (Velasquez did not comply with officer commands, entered vehicle, turned it on, and eventually dropped his hands).

[27] *See* Docket No. 78, Ex. 2 (partial video footage of the disputed events).

[28] *See* Docket No. 84-2, Ex. 13 at 144:1-144:8; Docket No. 85, Ex. 15 at 60:1-3 (describing Officer Middlkauff's warning to Velasquez to not move and put his hands up).

Defendants counter that Velasquez disobeyed police orders – raising his hands only after repeated warnings, entering and operating his vehicle, and lowering his hands – all against the officers' orders.[30]

Finally, the parties present conflicting evidence as to when (1) Velasquez was incapacitated and (2) whether the officers were able to safely stop shooting before they did.[31] The inconsistent record leaves a disputed, material fact on this point as well.

In sum, summary judgment is not warranted in favor of either party because significant factual disputes underlie all the claims in this case. Further, summary judgment is not warranted on the issue of immunity because a genuine dispute of material fact remains as to whether the officer's actions were reasonable.

The parties' motions are DENIED.

**B.   Velasquez's Request to be Incarcerated Locally and Appear at Trial**

Velasquez is currently incarcerated at Salinas Valley State Penitentiary and anticipates being "moved to out of state prison housing in Arizona."[32] Velasquez seeks a court order that the California Department of Corrections and Salinas Valley State Penitentiary "temporarily house"

---

[29] *See* Docket No. 84-3, Ex. 14 at 125:16-126:11 (Velasquez complied with orders to put his hands up).

[30] *See* Docket No. 84-3, Ex. 14 at 119:18-121:8 (Velasquez disobeyed police instructions to not enter his vehicle); Docket No. 85, Ex. 15 at 63:3-63:9, 65:8-14 (same); Docket No. 84-2, Ex. 13 at 144:9-144:13 (same); Docket No. 84-2, Ex. 13 at 149:4 (police ordered Velasquez to not start vehicle and Velasquez disobeyed this order); Docket No. 85, Ex. 15 at 69:5-69:24 (same); Docket No. 84-2, Ex. 13 at 152-54 (describing movement of vehicle disobeying police orders); Docket No. 85, Ex. 15 at 69:25-70:18 (Velasquez pulled the car forward over the curb into the brush); Docket No. 84-3, Ex. 14 at 167:9-167:24 (Velasquez dropped his right hand abruptly).

[31] *Compare* Docket No. 84-3, Ex. 14 at 138:9-138:12 (all the shooting happened over several seconds) and Docket No. 84-2, Ex. 13 at 177:10-177:23 (the shooting stopped pretty much at the same time), *with* Docket No. 84-2, Ex. 13 at 167:1-167:11, 167:14 (conceding that one officer fired his weapon after the other officers had stopped firing) and Docket No. 84-2, Ex. 13 at 158:19-158:21 (the other officers shot before Officer Richards).

[32] Docket No. 108 at 2.

7
Case No.: 5:11-cv-03588-PSG
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

him "in the Santa Clara County Jail" before trial until judgment is entered in this action.[33] The court finds Judge Whyte's recent opinion in *Montes v. Rafalowski* assessing the four *Ballard* factors instructive.[34] In that case, the court weighed an incarcerated plaintiff's request to be present and testify at his Section 1983 trial. The court found that when "security concerns and expense become substantial enough considerations, such that they counsel against issuing a writ of habeas corpus ad testificandum, other district and circuit courts are increasingly looking to videoconferencing as a viable alternative to live testimony."[35] Although vidoconferencing "is not the same as actual presence" and may impair the ability of the jury to observe a witnesses' demeanor, it does facilitate "meaningful participation at trial: plaintiff is able to testify, present evidence, and look each juror in the eye."[36] The court concluded that "even when resolution of the case hinges on the jury's ability to judge the veracity of plaintiff's testimony, considerable expense and security concerns may recommend videoconferencing over physical presence."[37]

In this case, the court finds the expense and security risks created by Velasquez's request weigh against Velasquez's request. Allowing Velasquez's participation through video conference would alleviate significant expense and security risks without unfairly prejudicing Velasquez by denying the jury the adequate opportunity to judge his credibility. To mitigate any potential unfair advantage in favor of Defendants, Velasquez and Defendants are ordered to meet-and-confer to discuss possible limiting instructions or whether other witnesses, particularly percipient witnesses,

---

[33] *Id.* Plaintiff additional requests are DENIED-AS-MOOT.

[34] *See supra* note 25.

[35] *Montes*, 2012 WL 2395273, at *2; *see also Thornton v. Snyder*, 428 F.3d 690, 698 (7th Cir. 2005) (finding that "the district court did not abuse its discretion in conducting the trial by videoconference" when hearing the plaintiff inmate's § 1983 action against corrections officials); *Twitty*, 712 F. Supp. 2d 30, 33 (D. Conn. 2009) ("the court finds that expense and security concerns outweigh the plaintiff's interest in physically appearing at trial, particularly in light of the availability of a reasonable alternative, that of having the plaintiff appear by videoconference").

[36] *Montes*, 2012 WL 2395273, at *2 (citations omitted).

[37] *Id.*

8
Case No.: 5:11-cv-03588-PSG
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

should also appear by videoconference in lieu of making a physical appearance in court. If the parties cannot reach an agreement, either party may seek relief from the court.

**IT IS SO ORDERED.**

Dated: December 4, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge