**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| VICTOR VELASQUEZ, | ) | Case No. 5:11-cv-03588-PSG |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING MOTIONS FOR** |
| v. | ) | **JUDGEMENT AS A MATTER OF** |
| | ) | **LAW AND FOR A NEW TRIAL** |
| CITY OF SANTA CLARA, *et al*, | ) | |
| | ) | **(Re: Docket Nos. 286, 288)** |
| Defendants. | ) | |
| | ) | |

On an otherwise quiet summer day six years ago, three sworn officers of the Santa Clara

Police Department fired thirteen bullets at Victor Velasquez at close range. Six shots struck

Velasquez in the upper body; three struck his head. Miraculously, he survived. After two weeks of

testimony and three days of deliberation, a jury of nine unanimously decided that the officers acted

reasonably in light of the circumstances they faced. Velasquez now asks the court for judgment as

a matter of law or, at a minimum, an order granting him a new trial with another jury. For the

reasons set forth below, the court declines both requests; Velasquez' motions are DENIED.[1]

---

[1] In his reply brief, Velasquez objects to all sections of Defendants' response that reference
portions of the trial transcript because Defendants did not attach those excerpts to their motion.
*See* Docket No. 296 at 1-2. Instead, they simply reference the copies of the transcript attached to
Velasquez' original motion. While this omission did not comply with Civil Local Rule 7-5, the
court is not persuaded that Velasquez was seriously prejudiced by having to "search[] amongst
several thousand pages of testimony for the precise page and line defendants have cited." *See id.* at

1

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A
NEW TRIAL

# I. BACKGROUND

This case went to trial because there are mixed accounts of what happened on the afternoon of June 20, 2008.   Everyone seems to agree that on that day, Velasquez was at the Courtyard Marriott across from the San Jose airport,[2] and that he was hiding from the police.[3]   There was a warrant out for Velasquez' arrest,[4] and the police were informed that Velasquez was armed.[5] When the police got wind that Velasquez was holed up at the Marriott, they sent a team of officers to apprehend him.[6]   The officers watched as Velasquez came out of the hotel, walked up to talk to someone in a car in the parking lot, approached his own car and started to get in.[7]   At that point, the officers sprang into action.   They pulled one unmarked police vehicle up directly behind Velasquez' car and positioned another to its side.[8]   Seconds later, the officers exited the vehicles, assessed the situation, and fired thirteen times.[9]

What happened in those few seconds between the officers jumping into action and the last shot being fired is where the key dispute in this case arises.   Construing the evidence in the light most favorable to Defendants and making all reasonable inferences in their favor, events unfolded

---

2.   Those searches would have to be done either way; it is simply a question of whether the thousands of pages searched would be attached to Docket No. 294 or 286.   In many ways, because he was searching his own organization of the transcripts, this process should have been easier for Velasquez.   In short, the court overrules those objections.

[2] *See* Trial Tr. at 319:19 (3/25/14; Docket No. 238).

[3] *See id.* at 323:20-24.

[4] *See id.* at 334:18-20.

[5] *See* Trial Tr. at 413: 2-7, 553:1-7, 595:18-19 (3/26/14; Docket No. 240).

[6] *See* Trial Tr. at 659:18-660:14 (3/27/14; Docket No. 244).

[7] *See* Trial Tr. at 319:20-322:21 (3/25/14; Docket No. 238).

[8] *See* Trial Tr. at 440:1-442:3 (3/26/14; Docket No. 240).

[9] *See* Trial Tr. at 212:13-215:14 (3/25/14; Docket No. 238).

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

as follows.  Nick Richards was positioned behind the car, on the driver's side, and Steven Buress and Craig Middlekauf were on the passenger's side of the car.[10]  The officers shouted at Velasquez, ordering him to stop, but Velasquez ignored those commands, got in and turned on the car.[11] Velasquez then put the car in gear, and the car began to move.[12]  Velasquez next reached down toward his waistband, then brought his hands up in an indistinct gesture.[13]  When the officers saw Velasquez reach down, they believed that he was going for a weapon, so they began to fire.[14] Only afterwards did the officers learn that Velasquez was unarmed.

Velasquez filed this lawsuit against the City of Santa Clara and the involved officers in state court, bringing claims under 42 U.S.C. § 1983, California's Bane Act, California's Ralph Act, and common law claims for battery, assault, negligence, and intentional infliction of emotional distress.[15]  Defendants removed to federal court.[16]  After extensive discovery, the parties filed cross-motions for summary judgment.[17]  The court denied these motions, finding that "the facts that underlie all of the claims at issue [were] in dispute."[18]  The court also denied Defendants' request for qualified immunity.[19]

---

[10] *See* Trial Tr. 403:4-7, 472:4-73:13 (3/26/14; Docket No. 240).

[11] *See id.* at 451:7-8.

[12] *See id.* at 557:1-6.

[13] *See* Trial Tr. at 1161:13-1163:17 (3/31/14; Docket No. 251); 1379:8-19 (4/1/14; Docket No. 256).

[14] *See id.*

[15] *See* Docket No. 1-1.

[16] *See* Docket No. 1.

[17] *See* Docket Nos. 77, 87.

[18] Docket No. 119 at 6.

[19] *See id.* at 7.  Velasquez renews his argument that Defendants are not entitled to qualified immunity in his motion for judgment as a matter of law.  *See* Docket No. 286 at 21.  The court agrees, which is why it was denied at summary judgment.  *See* Docket No. 119 at 6.  Without a

3

Trial began March 24, 2014 and lasted for 13 days.  Despite his present incarceration, Velasquez was permitted to appear at trial and testify live.  26 other witnesses, including five experts, also testified.  The court also authorized a jury inspection of Velasquez' vehicle, although Velasquez later declined to pursue it.  The jury asked over 50 questions during testimony and sent out twelve questions for the court during their deliberations.[20]  After a day and a half, the jury declared itself "hopelessly deadlocked."[21]  The court instructed them to return the next morning and try again.[22]  The next day, the jury asked two questions about the burden of proof, which, the court replied, were answered in specific instructions already provided.[23]  Shortly thereafter, the jury returned a verdict for Defendants on all counts.[24]  To overturn that verdict, Velasquez brings the instant motions.

## II. LEGAL STANDARDS

Fed. R. Civ. P. 50(b) provides that, upon a renewed motion for judgment as a matter of law, the court may: (1) "allow judgment on the verdict, if the jury returned a verdict," (2) "order a new trial" or (3) "direct the entry of judgment as a matter of law."  To grant a Rule 50(b) motion, the court must determine that "the evidence, construed in the light most favorable to the non-moving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's."[25]  In

---

renewed motion for qualified immunity from Defendants, the court sees no reason to revisit its holding.

[20] *See* Docket No. 278.

[21] *See id.* at 61.

[22] *See* Trial Tr. at 2123:1-2124:18 (4/8/14; Docket No. 275).

[23] *See* Docket No. 278 at 62.

[24] *See* Docket No. 279.

[25] *Callicrate v. Wadsworth Mfg.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)) ("The Ninth Circuit upholds any jury verdict supported by substantial evidence.").

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

other words, to set aside the verdict, there must be an absence of "substantial evidence" – meaning "relevant evidence that a reasonable mind would accept as adequate to support a conclusion" – to support the jury's verdict.[26] "Substantial evidence is more than a mere" scintilla;[27] it constitutes "such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence."[28] In reviewing a motion for judgment as a matter of law, the court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."[29] "In ruling on such a motion, the trial court may not weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists to support the verdict."[30]

Fed. R. Civ. P. 59 states that the court "may, on motion, grant a new trial on all or some of the issues." The "trial court may grant a new trial, even though the verdict is supported by substantial evidence, if 'the verdict is contrary to the clear weight of the evidence or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice.'"[31]

---

[26] *Id.*

[27] *Chisholm Bris. Farm Equip. Co. v. Int'l Harvester Co.*, 498 F.2d 1137, 1140 (9th Cir. 1974) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[28] *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).

[29] *Transbay Auto Serv., Inc. v. Chevron U.S.A., Inc.*, Case No. 3:09-cv-04932-SI, 2013 WL 496098, at *2 (N.D. Cal. Feb. 7, 2013) (quoting *Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006) ("We must view the evidence in the light most favorable to the nonmoving party – here, Josephs, – and draw all reasonable inferences in that party's favor.")).

[30] *Id.* (citing *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir. 1984) ("Neither the district court nor this court may weigh the evidence or order a result it finds more reasonable if substantial evidence supports the jury verdict.")).

[31] *Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010) (quoting *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999)).

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.  DISCUSSION

**A.   Judgment As A Matter Of Law Is Not Warranted**

Velasquez argues for judgment as a matter of law as to all claims under two theories.[32]

First, he asks the court to accept four fundamental facts and argues that based on those ostensibly

uncontested facts, no reasonable jury could conclude that Defendants had a clear line of sight when

they decided to shoot Velasquez.[33]   Second, he argues that the forensic evidence from the bullet

wounds precludes any reasonable jury from concluding that Velasquez' hands were near his

waistband when he was shot, and no reasonable jury could conclude that the officers' actions a

reasonable if his hands were raised.[34]   The court will take up each argument in turn, though neither

justifies overturning the jury's verdict.

**1.   A Reasonable Jury Could Have Rejected Velasquez' Four Fundamental Facts**

Velasquez rests his first argument on four "fundamental facts" that, he believes, no

reasonable jury could reject: (1) Richards fired first; (2) Richards could not see Velasquez (or his

hands) from where he was shooting; (3) Richards shot through a tinted window; (4) Richards shot,

in part, to create a clearer view of Velasquez.[35]   However, as Velasquez himself acknowledges,

---

[32] The parties seem to agree that most claims will stand or fall on the reasonableness analysis presented in these two theories.  *See* Docket No. 296 at 9; Docket No. 294 at 12-14. Velasquez attempts to argue that his state law negligence claim is subject to a different standard, but the very case he cites in support of that argument makes clear that while "an officer's lack of due care can give rise to negligence liability for the intentional shooting death of a suspect" and "police officers have a duty to use reasonable care in employing deadly force," "claims of excessive force under California law are analyzed under the same standard of objective reasonableness used in Fourth Amendment claims."  *Hayes v. Cnty of San Diego*, 736 F.3d 1223, 1232 (9th Cir. 2013). Therefore, the same reasonableness analysis applies, and the negligence claim also will stand or fall based on those arguments.

[33] *See* Docket No. 286 at 5-16.

[34] *See id.* at 16-19.

[35] *See id.* at 5.

6

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A
NEW TRIAL

these "fundamental facts" were contested at trial.[36]   Specifically, Richards and Buress each testified

that they did not know who shot first,[37] and Middlekauf indicated he believed he may have fired

first, though he was not certain.[38]   Richards also testified that he fired to protect his partners, not to

clear the visual blocks between him and the target.[39]   Velasquez complains that "to rule in favor of

Richards requires ignoring every other witness, including experts, that testified to the contrary, and

only accepting Richards' testimony," and argues that no reasonable jury could have done so.[40]

This is fundamentally incorrect from a legal standpoint.   The Ninth Circuit Model Jury Instruction

on the credibility of witnesses – given in this case – specifically notes that "proof of a fact does not

necessarily depend on the number of witnesses who testify about it."[41]   The jury was well within its

discretion to credit Richards' testimony, even over the contradictory testimony of other

witnesses.[42]

---

[36] *See* Docket No. 286 at 6 ("[T]he fundamental facts and evidence presented against Richards were not contradicted by anyone other than defendant Richards himself.").

[37] *See* Trial Tr. at 508:3-7 (3/26/14; Docket No. 240) ("Q. [Officer Richards,] you really don't know who shot first, do you? A. I know it wasn't me. Q. You know it wasn't you. A. That's what I do know. I don't know who from the right-hand side shot first, but I know it wasn't me"); 1863:15-18 (4/4/14; Docket No. 271) ("Q. [Officer Buress,] you don't know who shot first, do you? A. I do not know. Q. And you don't know the source of the first shots, do you? A. I couldn't tell you who shot first, sir").

[38] *See* Trial Tr. at 1208:6-8 ("I reported to San Jose I thought I was the first one who shot."); 1210:9-11 ("I just think there's other plausible explanations and I don't know if it can be narrowed down a hundred percent that Officer Richards fired first").

[39] *See* Trial Tr. at 475:5-10 ("A: . . . I never really considered where that window was in relationship to the Hyundai. That wasn't my concern.  Q. So it didn't matter where the window was?  A. To me at the time, all I knew was I was convinced that if he extended his arm with a weapon, he had the possibility of shooting my partners").

[40] *See* Docket No. 296 at 4.

[41] 9th Cir. Model Civ. Jury Instr. 1.11 (2007).

[42] *Cf. Guy v. City of San Diego*, 608 F.3d 582, 588 (9th Cir. 2010) ("[I]t has long been held that a jury may properly refuse to credit even uncontradicted testimony.") (citing *Quock Ting v. United States*, 140 U.S. 417, 420-21 (1891)).

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Both parties agree that whether Richards fired first, second or third, he could not see Velasquez as he pulled the trigger.[43]  Velasquez argues that "this movement from a clear view to a completely obstructed view" requires judgment as a matter of law "since countless things can happen" in the space of that transition.[44]  Yet he offers no legal authority to support such a per se rule, and indeed there is none.

To determine whether an officer's use of force was "reasonable" under the Fourth Amendment, a factfinder is required to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake.[45]  The factfinder is to consider the totality of the circumstances from the perspective of a reasonable officer at the scene, including, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[46]  Although the Supreme Court has recognized that this is a fact-intensive inquiry that is "not capable of precise definition or mechanical application,"[47] Ninth Circuit case law provides some basic guidance.  For example, an officer's use of deadly force is justified when he has probable cause to believe that the suspect posed a serious danger to them or to others,[48] and once an officer has made that determination, he is justified in

---

[43] *See* Docket No. 286 at 10 ("From [Richards'] location, he could not have seen Plaintiff reach down or reach anywhere before he shot."); Docket No. 294 at 6 ("At the time Richards shot, he could not see the plaintiff").

[44] *See* Docket No. 294 at 8.

[45] *Graham v. Connor,* 490 U.S. 386, 396 (1989).

[46] *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

[47] *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

[48] *Blanford v. Sacramento Cnty*., 406 F.3d 1110, 1117 (9th Cir. 2005); *see also Garner*, 471 U.S. at 11 (finding it to be constitutionally reasonable for an officer to use deadly force "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others").

8

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

using deadly force until the threat has been eliminated.[49]   An officer is not necessarily required to

find and choose the least intrusive manner of accomplishing his objective, and failure to do so is

not constitutionally unreasonable.[50]

At the end of the day, the reasonableness of the use of force in any given situation is

"highly fact-specific,"[51] which is precisely why this case went to a jury.  The jury found that, in

light of all the factors above, it was not unreasonable for the officers to shoot at Velasquez – a

fleeing, ostensibly armed felon making furtive movements.  Without authority establishing that

their decision was legally untenable, this court is not in a position to disagree.

> ### 2.  A Reasonable Jury Could Have Concluded That Velasquez Raised His Hand(s) During The Gunshots

Velasquez also argues that he is entitled to judgment as a matter of law because he had

bullet wounds on the back of his hands, so no reasonable jury could find that he did not have his

hands raised in surrender when he was shot, and if he had his hands raised in surrender, he could

not have been reaching for anything near his waist band, and if he was not reaching for anything at

his waist, no reasonable officer could have believed that he was reaching for a weapon.[52]  If the

jury accepted each of these propositions as true (which, he argues, they must), then it could not

reasonably conclude that the officers had a reasonable belief that Velasquez posed an immediate

risk of danger.[53]

---

[49] *See Wilkinson v. Torres*, 610 F.3d 546, 552 (9th Cir. 2010).

[50] *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) ("Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment").

[51] *Wilkinson*, 610 F.3d at 551.

[52] *See* Docket No. 286 at 16-19.

[53] *See id.*

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The most obvious problem with this argument is that it relies on a chain of inferences and that are tenuous at best, and Velasquez is not entitled to the benefit of the doubt with respect to those inferences.   If the jury chose to reject any one of the links in Velasquez' logical chain, and substantial evidence supports that choice, his entire theory falls apart.  In their opposition, Defendants target the first premise, that bullet wounds in the back of the hand necessarily indicate that Velasquez' hands were up when the shooting began.[54]  Velasquez' own expert testified that it was possible that Velasquez raised his hands after the initial shot was fired, as it takes a mere nanosecond to accomplish that motion.[55]  The expert testified that he did not know that the movement took place before the initial shot, and he did not know that it had not; there was no way to tell.[56]  A reasonable jury could conclude that, in light of the officers' testimony, that is the most likely scenario, such that the officers' concerns about the danger posed by Velasquez were perfectly reasonable.  Once again, the court is not in a position to substitute its judgment regarding the most likely sequence of events for the jury's.

At its core, Velasquez' motion for judgment as a matter of law asks this court to set aside the opinion of the citizenry and take Officers Richards, Buress and Middlekauf to task for split-second decisions that made in the heat of the moment.   Yet that is precisely what higher courts have cautioned against.[57]  Everything was happening quickly, the officers had been told that

---

[54] *See* Docket No. 294 at 7.

[55] *See* Trial Tr. at 924:1-10 (3/25/14; Docket No. 248).

[56] *See id.* (Q. Isn't it true or isn't it possible that if there was a surrender move, it occurred after the initial shot? A. I -- I don't know that it was. I don't know that it wasn't. Could it have been, I suppose it could have been.).

[57] *See, e.g., Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 85 (1998) (recognizing the difficulty of evaluating police decision after the fact, when officers must simultaneously "act decisively" and "show restraint" while making decisions "in haste, under pressure, and frequently without the luxury of a second chance"); *Porter v. Osborn,* 546 F.3d 1131, 1139 (9th Cir. 2008) (applying a much lower standard of care where officer was required to make "split-second decisions" while facing "an evolving set of circumstances that took place over a short time period).

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A
NEW TRIAL

United States District Court
For the Northern District of California

1   Velasquez was armed, and several witnesses testified that before shooting, they saw Velasquez

2   reaching down toward his waist.  In the calm, cool setting of a courtroom five years later, with the

3   help of experts, videos, graphs and charts, it would be easy to second-guess the officers' decision

4   to shoot, but that was not the question put to the jury.  The jury was asked to decide what it would

5   have been reasonable for an officer to decide to do in that moment, based on the circumstances

6   before him.  In this case, the jury said it would be reasonable to shoot.  Because "relevant [and

7   substantial] evidence [was presented] that a reasonable mind would accept as adequate to support

8   [their] conclusion," judgment as a matter of law is not warranted.[58]

9   **B.   A New Trial Is Not Warranted**

10

11          Velasquez alternatively moves for a new trial under Rule 59.[59]  He argues that the court

12   made seven errors in the first trial, each of which justifies a re-do: (1) refusing to answer Jury

13   Question No. 8; (2) denying Plaintiff's Motions-in-Limine Nos. 11 and 13; (3) granting

14   Defendants' Motion-in-Limine No. 6; (4) permitting references to Velasquez' alleged gang

15   membership without providing "special gang instruction" to the jury; (5) refusing to instruct the

16   jury that "flight alone, without more, cannot be a justification for deadly force;" (6) denying

17   Velasquez' motion for a mistrial after the court refused to answer Jury Question No. 8 and (7)

18   denying Velasquez' implicit request for a mistrial after Officer Buress told the jury that Velasquez

19   may have been charged with a violent crime at one of his arrests.[60]  As detailed below, the court is

20   not persuaded that any of these decisions constituted error, and they do not persuade the court that

21   the jury's verdict was "contrary to the clear weight of the evidence," "based upon evidence which

22   is false," or "a miscarriage of justice."  The motion therefore must be denied.

23

24

---

25   [58] *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).

26   [59] *See* Docket No. 288.

27   [60] *See id.* at 2-3.

28

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A
NEW TRIAL

1.  **The Court Met Its Responsibility To Eliminate Jury Confusion By Referring Them To Previous Instructions That Directly Addressed The Burden Of Proof In Response to Jury Question No. 8.**

Velasquez' first argument for a new trial is that the court committed error when it refused to provide additional instructions in response to Jury Question No. 8.[61]  Question 8 had two parts: (1) "Is it true that if there's any doubt, the verdict should go to the defendants?" and (2) "What level of certainty do we need to have in order to side with the plaintiff?  51%, 70%, 99%?"[62]  Initially, the court was inclined to respond to both questions, answering the first question simply, "No," and the second, "Greater than 50%."[63]  However, Defendants argued that those answers would prejudice the jury, swaying them in Velasquez' favor.[64]  They urged that the instructions already provided by the court, which spelled out the burden of proof for each claim, sufficiently answered the question, and the court should simply refer the jury back to those instructions.[65]  After a vigorous discussion,[66] the court ultimately agreed and answered the question by referring the jury back to Section 4 of the preliminary instructions and Section 14-A of the final instructions.[67]  Velasquez objected to the court's decision at the time, moved for a mistrial shortly thereafter, and now moves for a new trial again based on the court's response to the question, arguing that the court had "the responsibility to eliminate confusion when the jury asks for clarification of a particular issue," [68] and it failed to do so.[69]

---

[61] *See id.* at 9-11.

[62] *See* Docket No. 278 at 62.

[63] Trial Tr. at 2130:2-6 (4/9/14; Docket No. 277).

[64] *See id.* at 2130:24-25.

[65] *See id.* at 2130:18-23.

[66] *See id.* at 2131:4-2135:13.

[67] *See* Docket No. 278 at 62.

[68] *United States v. Southwell*, 432 F.3d 1050, 1052-53 (9th Cir. 2005).

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In *Weeks v. Angelone*, the Supreme Court held that a trial court satisfies its obligation to clarify juror confusion by "directing [the jury's] attention to the precise paragraph of [a] constitutionally adequate instruction that answers its inquiry."[70]   *Weeks* was an appeal from a petition for federal habeas corpus seeking relief from the imposition of the death penalty at trial.  In that case, the jury asked the court, "If we believe that Lonnie Weeks, Jr. is guilty of at least 1 of the alternatives, then is it our duty as a jury to issue the death penalty? Or must we decide (even though he is guilty of one of the alternatives) whether or not to issue the death penalty, or one of the life sentences?  What is the Rule?  Please clarify?"[71]  The court responded, "See second paragraph of Instruction #2 (Beginning with 'If you find from …')" which read, "If you find from the evidence that the commonwealth has proved, beyond a reasonable doubt, either of the two alternatives, and as to that alternative, you are unanimous, then you may fix the punishment of the defendant at death, or if you believe from all the evidence that the death penalty is not justified, then you shall fix the punishment of the defendant at imprisonment for life, or imprisonment for life with a fine not to exceed $100,000."[72]  The Supreme Court held that this instruction was constitutionally sufficient, particularly in light of the fact that the jury did not ask a follow up question to indicate that they did not understand the instruction. "To presume otherwise," the court reasoned, "would require reversal every time a jury inquires about a matter of constitutional significance."[73]

---

[69] *See* Docket No. 288 at 11-12.

[70] 528 U.S. 225, 234 (2000).

[71] *Id.* at 230.

[72] *Id.* at 234.

[73] *Id.*

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

Velasquez nonetheless argues that the Ninth Circuit's decision in *United States v. Southwell* compels a different result.[74] *Southwell*, decided five years after *Weeks*, was an appeal from a jury's conviction on an arson charge.  In that case, the court instructed the jury that "[i]f you unanimously find that the government has proven each element of the offense beyond a reasonable doubt, but unanimously agree that the defendant has shown by clear and convincing evidence that he was insane as defined in these instructions, then your presiding juror will write 'not guilty only by reason of insanity' on the verdict form."[75]  On the second day of deliberations, the jury sent out a question asking if they could find the defendant guilty if they unanimously concluded that he had committed each of the elements of the offense but could not unanimously decide if he was sane or not.[76]  Defense counsel suggested responding by simply telling them that no, they could not find the defendant guilty if they did not unanimously agree on the sanity question.[77]  The court unilaterally decided not to do so because it believed its instructions were "very clear," and it simply told the jury to use their "best recollection of the evidence and the instructions of the law [they] ha[d] been given."[78]  The Ninth Circuit reversed, holding that the trial court's "failure to provide the jury with a clarifying instruction with it has identified a legitimate ambiguity in the original instructions is an abuse of discretion."[79]  It found that the court's original instructions "were

---

[74] 432 F.3d 1050 (9th Cir. 2005).

[75] *Id.* at 1052.

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *Id.* at 1053.

14

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

unclear as to what the jury should do in the very situation outlined in the jury's question," such that the court was obligated to "eliminate confusion" on that "particular issue."[80]

*Weeks*, not *Southwell*, governs the question before the court for several reasons.   First, unlike in *Southwell*, Jury Question No. 8 did not identify an actual ambiguity in the instructions, but rather sought further interpretation of the burden of proof.  The Ninth Circuit has recognized the substantial impact on the jury that a court's response to a question during deliberation may have.[81]  It would have been inappropriate for the court to further instruct the jury as to how to apply the standard.  Second, as in *Weeks*, the instructions to which the court directed the jury directly addressed its questions.[82]  Although the instructions did not provide specific "yes" or "no" answers, the Ninth Circuit Model Instructions given in this case did spell out the burden of proof for each claim.[83]  Third, as in *Weeks*, the court referred the jury back to two specific instructions, so the jury knew exactly where to look for the answer to its question, rather than simply referencing the instructions generally, like the court in *Southwell*.  Finally, to the extent that *Weeks* and *Southwell* are in tension, nothing in *Southwell* suggests it intended to limit or curtail the holding in *Weeks*, and in any event, the court is obliged to abide by the ruling of the higher court.[84]

---

[80] *Id.*

[81] *See, e.g.*, *Beardslee v. Woodford*, 358 F.3d 560, 591 supplemented sub nom. *Beardslee v. Brown*, 393 F.3d 1032 (9th Cir. 2004) (weighing the impact of the trial court's swift and blunt answer on the weight jurors may have accorded mitigation evidence); *United States v. Dunham*, 767 F.2d 1395, 1397 (9th Cir. 1985) (considering the potential impact on the verdict of miscommunications between judge and jury during deliberations).

[82] *See* Docket No. 278 at 62 ("Question: Is it true that if there's any doubt, the verdict should go to the defendants?  Answer: See Section 4 of the preliminary instructions and Section 14-A of the final instructions"); *see also* Docket No. 231 at 5 (Preliminary Jury Instructions, Section 4:)); Docket No. 269 at 15 (Final Jury Instructions, Section 14-A).

[83] *See id.*

[84] *See Nunez-Reyes v. Holder*, 646 F.3d 684, 692 (9th Cir. 2011).  Although the Ninth Circuit has never attempted to square/reconcile *Southwell* and *Weeks*, many courts within the Circuit have applied *Weeks* rather than *Southwell* in subsequent cases.  *See, e.g., Belshaw v. Prosper*, Case No. 09-cv-1496-DSF-JC, 2014 WL 1307559, at *12 (C.D. Cal. Mar. 31, 2014); *Pitto v. Yates*, Case No.

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

The court also was well within its discretion to decline any further interpretation of the burden of proof.  The exercise of that discretion is not error and has not resulted in a miscarriage of justice.  As in *Weeks* there is no evidence that the jury's question was not resolved by the court's direction, or that it did not apply the law correctly.  Absent any telling evidence to the contrary, the court must assume that the jury understood and followed the court's instructions,[85] and no such evidence has been presented here.

### 2. Allowing The Jury To View Velasquez' Booking Photos With His Gang Tattoos Did Not Result In Substantial Prejudice Or A Verdict Based On False Evidence

Velasquez next argues that he is entitled to a mistrial based on the fact that the jury was allowed to see a prior booking photo in which he had gang-affiliated tattoos.[86]  He claims that the relevant information could have been conveyed just as easily through a verbal description, and that juries are likely to consider people who are highly tattooed to be "bad people."[87]  He contends that these photos prejudiced the jury, requiring a new trial.[88]

The court has entertained these arguments before,[89] and they are no more persuasive now than they were then.  Although the Ninth Circuit teaches that the use of booking photos for identification purposes can be highly prejudicial,[90] these photos were admitted for a different

---

5:09-cv-03023-LHK, 2012 WL 4343838, at *8 (N.D. Cal. Sept. 21, 2012) *Armitage v. Clark*, Case No. 09-cv-463-L(POR), 2011 WL 1584946, at *5 (S.D. Cal. Apr. 25, 2011).

[85] *Sherrors v. Woodford*, 425 F. App'x 617, 621 (9th Cir. 2011) (citing *Richardson v. Marsh*, 481 U.S. 200, 211(1987)).

[86] *See* Docket No. 288-1 at 29.

[87] *See id.*

[88] *See id.*

[89] *See* Docket No. 139.

[90] *See Smith v. Rhay*, 419 F.2d 160, 164 (9th Cir. 1969).  s

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

purpose entirely.[91]  Excessive force cases are all about what the police officers knew of the suspect at the time of the incident.[92]  Defendants introduced the booking photo as evidence of the officers' state of mind going in to the encounter; the court specifically excluded any photos that the officers had not seen before engaging Velasquez.[93]  When the parties first litigated this issue at the pretrial conference, the court concluded that the photo's probative value as to the officers' mindset outweighed the prejudice to Velasquez under Rule 403.[94]  Nothing in the record persuades the court that this calculus was incorrect or that allowing the photo to be shown at trial resulted in "substantial" prejudice or a verdict "inconsistent with substantial justice."[95]

### 3.   The Court Did Not Err In Precluding Reference To Prior Officer-Involved Shootings In Which No Officer Misconduct Had Been Found

Velasquez' third argument for a new trial also seeks to relitigate an issue decided at the pretrial conference.  At that time, the court granted Defendants' Motion-In-Limine No. 6, precluding reference to prior shootings by the officers at issue in this case.[96]  Velasquez once again asserts that "the fact that these officers may have a higher propensity than others to be involved in police

---

[91] *See* Docket No. 220 at 3-4 ("Velasquez's tattoos are relevant evidence that goes to Defendants' risk assessment based on Velasquez's gang affiliation. . . . Velasquez's gang affiliation, even if he had not been fully validated by the time of his arrest, is relevant to the reasonableness of the officer's risk assessment at the time of the incident").

[92] *See Long v. City & Cnty. of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007) (emphasizing that an excessive force case is to be considered "in light of the facts and circumstances confronting the officers 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight'") (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

[93] *See* Docket No. 220 at 3 ("If an officer can testify under oath that he saw a photograph prior to Velasquez's arrest, then the photograph is fair game. If not the photograph is out").

[94] *See id.* ("The probative value of the evidence is significant despite the risk of unfair prejudice. This evidence will not be excluded on Rule 403 grounds").

[95] *Johnson v Santa Clara County*, 32 Fed. Appx. 203, 206 (9th Cir. 2002).

[96] *See* Docket No. 220 at 6.

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

1   shootings is highly relevant."[97]  This court does not disagree.  However, the Ninth Circuit, the

2   Supreme Court and the Federal Rules of Evidence all conclude that the risk that a jury will impose

3   liability for conduct other than that which is before the court – or simply decide to impose liability

4   because a bad person deserves punishment – creates a prejudicial effect that outweighs

5   its relevance.[98]

6          Velasquez tries to skirt this problem by arguing that (at least a few of) the prior incidents

7   were sufficiently similar to the current incident that they should have been admitted under the test

8   set forth in *Duran v. City of Maywood*.[99]  *Duran* sets forth four factors that must be met in order to

9   admit such evidence: (1) there must be sufficient proof for the jury to find that the defendant

10  committed the other act; (2) the other act must not be too remote in time; (3) the other act must be

11  introduced to prove a material issue in the case and (4) the other act must be similar to the offense

12  charged.[100]  Velasquez fails to mention, however, that "even if all four conditions are met, the

13  evidence may still be excluded if under Rule 403, the probative value of the evidence is

14  substantially outweighed by the danger of unfair prejudice."[101]

15         Here, there is no dispute that the officers were involved in other shootings.  However,

16  Velasquez assumes without support that the passage of four years does not make the incidents too

---

[97] *See* Docket No. 288-1 at 13.

[98] *See Old Chief v. United States*, 519 U.S. 172, 181 (1997); *United States v. Hankins*, 94 F. App'x 507, 510 (9th Cir. 2004); Fed. R. Evid. 404(b) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character").

[99] 221 F.3d 1127, 1132-33 (9th Cir. 2000).

[100] *See id.*

[101] *Id.*

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

remote in time[102] and that the fact that a former target was seated in a car makes the incidents sufficiently similar.[103]  The court is not persuaded on any of those points.  Furthermore, the "material issue" that the incidents would be introduced to support is simply that Defendants have a propensity "shoot first and then find a reason for the shooting;"[104] this conclusion is unsupported by any evidence of misconduct from the prior cases and makes the very deduction that higher courts seek to discourage.  Because the court is not persuaded that the *Duran* factors weigh in favor of admitting the evidence here, and because any probative value the incidents may have offered is substantially outweighed by their prejudicial effect, the court stands by its ruling to exclude them.

Finally, Velasquez argues that even if the evidence of the shootings was not admissible against the officers individually, the fact that two of the officers in the case were responsible for over half of the shootings in the Santa Clara Police Department – with the remaining half divided among more than 130 officers – should have been admissible against the City, as evidence of its failure to train these officers properly.[105]  However, as before, this argument assumes that the prior shootings were in violation of departmental policy – and of the Constitution – without any evidence to support that claim.  The court excluded the evidence precisely because no such showing was made at the pretrial conference,[106] and Velasquez offers no additional evidence to provide a showing now.  Again, the court will stand by its prior ruling.

---

[102] The cases relied upon in *Duran* consider events no more than two years in the past.  *See Bibo-Rodriguez*, 922 F.2d 1398, 1400 (9th Cir.1991); *United States v. Miller*, 874 F.2d 1255, 1268 (9th Cir.1989).

[103] Generally speaking, courts find this factor where the factual circumstances of the case are strikingly similar.  *See, e.g., United States v. Sarault,* 840 F.2d 1479, 1486 (9th Cir. 1988) (finding incidents were similar under Rule 404(b) where both incidents occurred during the same time period, involved dealings with the same two parties and involved a similar scheme effectuated in the same manner).

[104] Docket No. 288-1 at 13.

[105] *See* Docket No. 288-1 at 13.

[106] *See* Docket No. 220 at 6.

19

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

United States District Court
For the Northern District of California

### 4.   Velasquez Has Waived His Right To Request A Jury Instruction His Alleged Gang Membership

Velasquez' fourth basis for requesting a new trial is the court's failure to provide a special jury instruction about Velasquez' alleged gang membership.[107]  He points out that when the court allowed Defendants to offer evidence of Velasquez' gang membership – despite the fact that he had never been validated as such – it specifically ordered that "a jury instruction shall be tendered that Velasquez' gang affiliation shall not guide the jury's decision on ultimate liability in this case."[108]  Such an instruction was not provided, and Velasquez argues that this alone justifies a new trial.  Yet Velasquez glosses over the fact that he failed to propose any such instruction, arguing that the omission is not relevant because "[t]he fact that the court . . . failed to give the instruction it ordered cannot be shifted to a party."[109]   However, the court merely ordered that the jury instruction should be tendered – *offered* – for the court's consideration: "I would like a jury instruction that explains to the jury that his gang affiliation, in and of itself, is not the basis upon which they should decide liability in this case.  I will leave it to you all to work out some language that makes that clear to the jury."[110]   Velasquez failed to meet this basic prerequisite and has thus waived this argument.

### 5.   The Court Acted Within Its Discretion In Declining To Instruct The Jury That Flight Alone Cannot Justify The Use Of Deadly Force

Velasquez' fifth basis for requesting a new trial is that the court erred in declining to modify the Ninth Circuit's Model Jury Instruction regarding the use of deadly force.[111]  He argues

---

[107] *See* Docket No. 288-1 at 14.

[108] *Id.* at 4.

[109] Docket No. 288-1 at 15.

[110] Recording of Pretrial Conference at 5:17:35-52.

[111] *See* Docket No. 288-1 at 15.

20

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

that a party is "entitled to an instruction about his or her theory of the case if it is supported by law and has a foundation in the evidence,"[112] and it therefore was error for the court not to adopt his proposed amendment and instruct that "flight alone, without more, cannot be a justification for the use of deadly force."[113]

"A district court has substantial latitude in tailoring jury instructions, and as long as the district court's instructions 'fairly and adequately covered the issues presented, correctly stated the law, and were not misleading,' the instructions will be upheld."[114] An instruction is adequate even if it does not "incorporate every proposition of law suggested by counsel, or amplify the instruction," so long as it provides sufficient and accurate guidance for the jury.[115] Here, Velasquez does not and cannot argue that the instruction given was legally incorrect.  He simply complains that the court did not provide the additional language that he requested.  Yet the Ninth Circuit has made it clear that the court is under no obligation to do so.  It exercised its "broad discretion" and elected to stick with the model instructions. [116]  That exercise did not constitute error, nor does it justify a new trial.

### 6.   Velasquez Did Not Move For A Mistrial When Buress Mentioned The Violent Charge And Therefore Has Waived His Right To Do So Now

Velasquez' final pitch for a new trial is that the court erred in not granting a new trial after Officers Buress and Moiseff let slip to the jury that Velasquez may have been charged with a

---

[112] Docket No. 288-1 at 15 (citing *Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1117 (9th Cir. 2008)).

[113] *Id.* (citing *Adams v. Speers,* 473 F.3d 989, 994 (9th Cir. 2007)).

[114] *See Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1051 (9th Cir. 1998).

[115] *Millerv. Rykoff-Sexton, Inc.*, 845 F.2d 209, 212 (9th Cir. 1988); *see also Pac. Enterprises v. Fed. Ins. Co.,* 189 F. App'x 591, 592 (9th Cir. 2006).

[116] *Harrington v. City of Redwood City*, 7 F. App'x 740, 742 (9th Cir. 2001).

21

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

**United States District Court**
For the Northern District of California

violent crime at the time of one of his bookings.[117]   It is undisputed that this misstep was in

violation of the court's pre-trial orders.  However, while Velasquez did "immediately object[] to

the testimony and raise[] the issue of a mistrial with the court" at sidebar, he elected not to actually

move for a mistrial because according to counsel, "the court indicated it was not interested in

considering a mistrial at that point."[118]   That decision was a strategic choice by counsel that cannot

be criticized, but in so choosing, Velasquez plainly waived his right to argue later for a new trial

based on the failure to grant his non-existent motion.[119]

          Even if Velasquez did move for a mistrial at the time – which he did not – the court did not

err in denying the motion.  To merit a mistrial in the Ninth Circuit, the moving party must

demonstrate that the opposing counsel's misconduct substantially interfered with the defendant's

interest.[120]   Further, a new trial should only be granted "where the flavor of misconduct  . . .

sufficiently permeate[s] an entire proceeding [] that the jury was influenced by passion and

prejudice in reaching its verdict."[121]   A trial judge has broad discretion in determining whether to

grant a motion for mistrial.[122]   Here, the alleged taint would have stemmed from a single word let

slip at the very end of a long trial day.  The court provided a curative instruction the very next

---

[117] *See* Trial Tr. at 602:24-603:1 (3/26/14; Docket No. 240); 1367:1-7 (4/1/14; Docket No. 256).

[118] *See* Docket Nos. 288-1 at 15; 298 at 8.

[119] *See Schino v. United States*, 209 F.2d 67, 73 (9th Cir. 1953) ("The failure to move for a mistrial and the allowance of the week's further proceeding amounts to a waiver."); *see also Jackson v. Giurbino*, 364 F.3d 1002, 1006 (9th Cir. 2004); *Porterfield v. Burlington N. Inc.*, 534 F.2d 142 (9th Cir. 1976).

[120] *See SEC v. Jasper*, 678 F.3d 1116, 1129 (9th Cir.2012); *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1405 (9th Cir.1995).

[121] *Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 516–17 (9th Cir.2004) (citing *Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d 1283, 1286 (9th Cir.1984)).

[122] *Corley v. Cardwell*, 544 F.2d 349, 351 (9th Cir.1976) (citing *Illinois v. Somerville*, 410 U.S. 458 (1973)); *see also Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1192 (9th Cir.2002) ("[W]e will not overrule a district court's ruling about the impact of counsel's alleged misconduct unless we have a definite and firm conviction that the court committed a clear error of judgment ").

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A
NEW TRIAL

morning.[123]  While Velasquez argues that this tiny slip up "sprayed the Plaintiff with the aroma of violence [that] like the smell of a skunk, once spread, [] is long remembered,"[124] he also acknowledges that "plaintiff's character was a theme running through the defendants case – Velasquez is a bad, dangerous, gun toting, drug dealing, gang member."[125]  In light of this pervasive theme – supported, in large part, by properly admitted evidence – the court cannot conclude that the flavor of a single kidnapping reference so permeated the proceeding that "the jury was influenced by passion and prejudice in reaching its verdict."[126]

## IV. CONCLUSION

Whenever police are forced to use deadly force in the line of duty, it is important to reflect on whether such force was warranted.  Yet it is undeniable that police have the power to use deadly force under certain circumstances.  A jury of nine people decided that those circumstances were present here.  Although the court may have reached a different conclusion if it were sitting as factfinder, it is not.  Judgment as a matter of law or a new trial are only to be granted if the jury's verdict was not supported by substantial evidence or resulted in a serious miscarriage of justice, neither of which is the case here.

---

[123] *See* Trial Tr. 619:12-18 (3/27/14; Docket No. 244) ("The Court: Members of the jury, good morning. Welcome back. Before we return to testimony from Officer Moiseff, I do need to provide you with one instruction. Yesterday during Officer Moiseff's testimony you heard a reference to a kidnapping. Mr. Velasquez was not charged with any kidnapping. You should disregard any reference to kidnapping in weighing the evidence and in your deliberations.").

[124] Docket No. 288-1 at 17-18.

[125] Docket No. 298 at 8.

[126] *Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 516–17 (9th Cir.2004)

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

**IT IS SO ORDERED.**

Dated: July 31, 2014

_____
PAUL S. GREWAL
United States Magistrate Judge

Case No. 5:11-cv-03588-PSG
ORDER DENYING MOTIONS FOR JUDGEMENT AS A MATTER OF LAW AND FOR A NEW TRIAL